PLEASANTS v. SOUTHERN RY. CO.

CENTRAL TRUST CO. OF NEW YORK et al. v. RICHMOND & D. R. CO.
et al.

(Circuit Court of Appeals, Fourth Circuit.   March 30, 1899.)

No. 296.

1. MASTERS IN CHANCERY—POWERS OF COURT IN FIXING COMPENSATION.

Equity rule 82, requiring the compensation of a master in chancery for his services in any particular case to be fixed by the circuit court in its discretion, "having regard to all the circumstances thereof," contemplates that such compensation shall not be finally determined until the services for which it is allowed have been rendered and all the circumstances are known; and an order made during the pendency of a railroad foreclosure suit, fixing the compensation of a master therein at a certain sum per year until his discharge, and directing that the amount earned at that rate up to a certain date, prior to the date of the order, be paid by one of the parties, does not constitute a contract as to future services binding upon either the court or the parties, but is merely an interlocutory order, subject to revision; and if the services subsequently required of the master are of less value than those previously rendered, and upon which the order was based, the court may, on or after his discharge, reduce the amount to be allowed him therefor.

2. SAME—ESTOPPEL OF PARTY TO ASK REDUCTION OF COMPENSATION.

A party is not estopped by failing to ask that the compensation of a master be reduced, after it has been fixed by an interlocutory order at a certain sum per month until his discharge, nor by failing to move for his discharge before further services are rendered, from asking that the allowance for such services be reduced on final settlement of his account after his discharge.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia.

This is an appeal by one of the special masters from an order of the circuit judge entered May 19, 1898, determining the final compensation of the special masters appointed in the consolidated causes of Clyde and others against the Richmond & Danville Railroad Company and others, and the Central Trust Company of New York against the same defendants. By an order entered August 16, 1892, Messrs. M. F. Pleasants and Thomas S. Atkins (Pleasants being the clerk of the court) were appointed special masters to hear evidence and take the necessary accounts, and report to the court the amount and nature of all the indebtedness of the Richmond & Danville Railroad Company, and whether secured by mortgage, pledge, or other lien upon any portion of the corporate property. On November 21, 1892, upon petition of these special masters, the court ordered that the receivers of the railroad property should pay to each of them $125 per month from the date of their appointment, on account of their services, their full compensation being reserved for future consideration. On November 12, 1895, the railroad property having been sold under a decree of foreclosure entered in the cause, upon the application of the special masters to have their compensation fixed it was ordered that they be allowed, from the date of their appointment, at the rate of $6,000 a year each, until finally discharged by the court; and, it appearing that they already had received on account at the rate of $125 per month each, the Southern Railway Company, the purchaser of the railroad property, was directed to pay to each the sum of $13,500, in full of the balance due to them up to August 16, 1895. The Southern Railway Company afterwards paid them $6,000 each up to August 16, 1896, and continued to pay them $125 per month each to the date of their discharge. In a decree passed May 12, 1897, the special masters were finally discharged, and Thomas S. Atkins, as sole special master, was directed to report what amount was due to the special masters

under the decrees theretofore entered. On July 14, 1897, Atkins reported that the compensation of the special masters had been fixed at $6,000 each per annum, and that they had been paid in full up to August 16, 1896, and that afterwards they had each been paid $125 for 8 months, and there was due to each the balance for 8 months and 27 days, to May 12, 1897, the date of their discharge, amounting to $3,445.06 each. On the filing of the foregoing report, the Southern Railway Company, the appellee, being the party under the terms of its purchase chargeable with the payment of such sums as the court might adjudge to be prior in lien to the mortgage foreclosed, filed its petition and exceptions, protesting that the amount claimed by the masters was disproportionate to the services rendered by them, and prayed that the amount might be reduced to a fair and reasonable compensation. The appellee, in its petition, charged that since August 16, 1895, owing to the fact that the questions of law upon which the allowance of some of the contested claims depended were pending upon appeals, and the fact that large numbers of contested claims had been settled by compromise, the masters' duties had required very little work, and further showed that the appellant had, in addition to his emoluments as clerk of the court, been allowed in this case liberal compensation as a master to make sale of the railroad, and also for services in reporting on special debts incurred by the railroad for operating expenses, so that he had already received, since his appointment as special master, over $32,000 as compensation under different appointments in connection with the case; and the appellee insisted that the fact that the appellant's duties as special master had not prevented him from earning these sums, besides his emoluments as clerk of the court, should be considered in fixing his final compensation as special master. The matter of the petition of the appellee came on to be heard, and, after argument, the circuit judge, on May 2, 1898, filed a memorandum of his conclusions, in which he held that the masters should have been discharged earlier, and the judge supposed that they had been discharged some time before the order to that effect was actually signed; that their duties for some time before their discharge had been comparatively light; and that the appellant had been paid, besides allowances for other services in this case, at the rate of $6,000 a year for four years from August 16, 1892, to August 16, 1896, and at the rate of $125 per month from the last-mentioned date to May 12, 1897, the day of their final discharge. Taking into consideration the sums already paid to them, the circuit judge concluded that the special masters had already been sufficiently paid, and that no further allowance should be made to them, and the court so decreed. From this decree the appellant, Pleasants, has appealed.

C. V. Meredith, for appellant.

Willis B. Smith, for appellee.

Before MORRIS, BRAWLEY, and WADDILL, District Judges.

MORRIS, District Judge (after stating the facts as above). The contention of the appellant is: (1) That the court having, by its order of November 12, 1895, fixed the compensation of the appellant at $6,000 a year from the date of his appointment, August 16, 1892, until finally discharged, it was thereafter beyond the power of the court to reduce that rate of compensation as to time which had already elapsed, and as to services which had been already rendered; and (2) that the Southern Railway Company, the appellee, was estopped from contesting the allowance because it was before the court when the rate of compensation was fixed, and knew of it, and afterwards paid it from August 16, 1895, to August 16, 1896, and also knew that the appellant was acting as master with the expectation of continued payment in accordance with the order until discharged. The argument in behalf of the appellant is that the order of November 12, 1895, resulted in a contract, either between the appellant

and the court, or between the appellant and the appellee, analogous to the employment of an accountant at a fixed salary, which neither party could set aside as to services performed, and which order had the effect of fixing the rate of compensation without regard to the value of the actual service performed. It is obvious that the appellant must fail in this contention unless he is able to show that he was serving under an order which the court was without power to modify at the time when the final order was passed. There is no rule or practice regulating the compensation of masters in chancery except that contained in equity rule 82, which provides that:

"The compensation to be allowed to every master in chancery for his services in any particular case shall be fixed by the circuit court in its discretion, having regard to all the circumstances thereof, and the compensation shall be charged upon and borne by such of the parties in the cause as the court shall direct. The master shall not retain his report as security for his compensation; but when the compensation is allowed by the court, he shall be entitled to an attachment for the amount against the party who is ordered to pay the same, if, upon notice thereof, he does not pay it within the time prescribed by the court."

This rule contemplates that the services of the master shall be completed, and his report prepared, before his compensation is fixed, and that the court is to fix the compensation for his services, "having regard to all the circumstances thereof." The intention of the rule is that the compensation to be allowed shall remain in the discretion of the court until the work is completed, and all the "circumstances thereof" can be considered. The master accepts his appointment with the full knowledge that his compensation is to be fixed, not by any arbitrary standard or usage, but by the court's opinion, after the services are completed, of what is a fair compensation which the party to be charged should be required to pay. It is true that the duties of the special masters appointed to pass upon claims in railroad foreclosures and receiverships, in which their duties may continue for several years, are peculiar, and it has been found convenient to allow them a salary by the month or year, rather than for each special service; but the convenience of this practice is not to destroy the control which the equity rule requires the court shall exercise, to the end that the circumstances of the service shall regulate the compensation, and that the parties who are to pay shall be charged only with a fair allowance for the service. The original cause in which the present appeal arises was instituted in 1892, and the special masters were appointed in that year. The property was sold June 15, 1894, and the order fixing the masters' compensation at $6,000 a year each from the date of their appointment was entered November 12, 1895, three years and three months after their appointment, and by that order the Southern Railway Company was decreed to pay their allowances up to August 16, 1895. The court had before it then the facts upon which to ascertain that the services to that date were fairly worth the amounts allowed. The court further ordered, but without decreeing who should pay it, that the $6,000 a year to each master should continue until they were finally discharged. Probably it was in the mind of the court that as nearly a year and a half had already elapsed since the sale of the property,

and over three years since their appointment, the discharge of the special masters would not be long delayed, and the court undertook to fix the compensation of the special masters for the services they might thereafter perform until discharged, basing the allowance upon the character and amount of services which prior to that date had been required of them; but not determining who should pay, because it could not certainly be determined in advance by whom it should be borne. Could it be successfully contended, if immediately after the entering of that order all the claims which the special masters were to report upon had been compromised and settled, and they never had another sitting or made another report, and by an oversight they were not discharged for a year and a half, that they would be entitled to ask the court to decree the Southern Railway Company, or any one else, to pay to the two the full compensation at the rate of $12,000 a year for that year and a half? Surely, this would not be consistent with justice, nor with the rule which requires the court to fix the compensation, having regard to all the circumstances of the service. In the present case, what happened was that, although the special masters performed some service, it was not at all the difficult and responsible work in passing upon contested claims for large amounts which was contemplated when the order of November 12, 1895, was under consideration by the court, and it also happened that the discharge of the special masters was delayed, and they were continued in office by an oversight. The circuit judge who signed the final order now appealed from was the same judge who signed the order of November 12, 1895, and who signed the decree of foreclosure, and by whom all the proceedings from the year 1893 were directed. The whole case was within his knowledge; and when he determined that the masters should have been sooner discharged, and that their labor had been comparatively light, and that, all the circumstances considered, $125 per month to each from August 16, 1896, to the date of their formal discharge, on May 12, 1897, was sufficient compensation, and refused to decree that any party to the cause should pay them anything more, he was acting upon facts which were within his own knowledge, and was doing what equity rule 82 required him to do, viz. fixing the compensation for their services, "having regard to all the circumstances thereof."

But the appellant contends that the order of November 12, 1895, fixing the compensation for the future, was a final order, which, after the term, the court could not disturb. When the amount of compensation for a service to be performed by an officer of the court is to be fixed by the court in its discretion with reference to the special circumstances, it must be a very clear case indeed which deprives the court of the power to modify the compensation, if it should turn out, before it is paid, that the circumstances which determined the court's judgment were not the actual ones. In the present case we do not think the order of November 12, 1895, bound the Southern Railway Company as to the future, without some further order of the court. It is not a decree inter partes. It is true the order allowed the special masters $6,000 a year each until discharged, but the Southern Railway Company was directed to pay them only up

to August 16, 1895. It seems to us that, before the Southern Railway Company could be compelled to pay any further compensation to the special masters as part of the costs to be borne by them, there was required a decree adjudging that they were chargeable with it. The order was not, therefore, in a strict sense final, because a future decree was necessary before execution could be had. It was in its nature interlocutory, and was so regarded by the judge who signed it. Even in a doubtful case of this nature, the doubt should be resolved in favor of the way in which the order was treated by the court which entered it. McGourkey v. Railway Co., 146 U. S. 536–550, 13 Sup. Ct. 170. Upon a rehearing after interlocutory decree, the whole matter is open to revision, and is under the control of the court, to be dealt with according to its better informed judgment. Fourniquet v. Perkins, 16 How. 82–86.

It is further urged on behalf of the appellant that the appellee is estopped from resisting the allowance claimed, because, by its conduct, it acquiesced in the continued effect of the order of November 12, 1895, and failed sooner either to ask to have the special masters discharged or their yearly allowance reduced. It is difficult to apply the principles of the doctrine of estoppel to this case. The special masters were not appointed or continued in office at the instance of the appellee. They were appointed by the court to assist it, and performed services because of their duty to the court. They exercised quasi judicial powers, and it was as much their duty as that of any party to the cause to ask their own discharge, whenever it became apparent that their continuance was not required. The appellee did not seek their continuance; on the contrary, the circuit judge, in the memorandum for a decree, makes this statement:

"It is proper to state that on application of the Southern Railway, by counsel, made some time before the entry of the decree of May 12, 1897, discharging the masters, the court had directed that such an order be entered, and was under the impression that it had been filed with the clerk; but it was made to appear at the date of said last-mentioned decree that because of the illness of counsel theretofore, but not now, representing said railway company, it had not been done."

It is not at all evident that the special masters did or refrained from doing anything by reason of any conduct of the appellee, or how, by its conduct, the court should be withheld from exercising its judgment as to what is a proper compensation for the actual service performed. If it be once shown that at the date of the order of discharge the court had a right to consider the circumstances of the service of the special masters, and what would be a proper compensation for their actual services, there can be no question of the entire reasonableness of the order refusing to decree that the appellee should pay any further sums to them. Allowances to a master during the progress of the cause are never considered as conclusively estopping him from asking and obtaining further allowance at the end of the cause, if he can show to the court that he has been, all things considered, insufficiently compensated. It is not unusual for the court, upon the petition of the master, at the winding up of the litigation in a railroad foreclosure cause, to review the services the

master has rendered, the time which he has devoted to it, the interruption to his own business, the interference with opportunities for other earnings, the amounts involved, and the assistance he has given to the court and to the parties interested in the fund, and upon all the facts, many of which are generally within the knowledge of the judge from his dealings with the cause, to increase the master's compensation. It was just this class of facts which it appears the circuit judge took into account in deciding that the appellant had been sufficiently compensated. He considered the small amount of work which the special masters were called upon to do for some time before they were discharged, the trifling nature of the claims which, towards the last, they were required to pass upon, the fact that the appellant's regular occupation was not interfered with, the fact that he had been most liberally paid for other services in the same case, and the fact that the special masters might have been earlier discharged without detriment, and should have been discharged, but still were paid $125 per month each until discharged; and, considering these facts, it is, we think, impossible to say that the circuit judge did not do right in refusing to decree that any party to the cause should pay the appellant any further compensation. Affirmed.